IN THE MATTER OF THE PETITION OF THE VANDERBILT UNIVERSITY FOR JUDICIAL REVIEW OF THE ADMINISTRATIVE DECISION OF THE TAX REVIEW BOARD RELATING TO NORTH CAROLINA INCOME AND FRANCHISE TAX ASSESSMENTS.

(Filed 10 June, 1960)

1. **Taxation § 20—**

In determining whether property is exempt from *ad valorem* taxes, the use to which the property is devoted rather than the character of the owner is controlling, while in determining exemption from franchise taxes, G.S. 105-125, the character of the owner is controlling, and in determining exemption from income taxes, G.S. 105-138(3), the character of the recipient of the income and the use the recipient makes of such income is controlling.

2. **Same: Taxation § 27—**

An educational institution of another state which engages in the business of renting real estate in this State is exempt from franchise taxes under G.S. 105-125 when no part of its net earnings inures to the benefit of any individual or private stockholder and its business here is carried on solely in its capacity of a nonprofit educational institution.

3. **Taxation §§ 20, 29—**

The income realized by an educational institution of another state from the rental of real estate owned by it in this State is exempt from income taxes under G.S. 105-138(3), when such income is placed in the general fund of such educational institution and is used exclusively for educational purposes.

4. **Taxation § 23½—**

The interpretation given tax statutes by the Commissioner of Revenue will be given due and careful consideration, but such interpretation is

not controlling and cannot be followed when it is in conflict with the clear intent and purpose of the statute under consideration.

RODMAN, J., took no part in the consideration or decision of this case.

APPEAL by petitioner, Vanderbilt University, from *Sharp, Special Judge*, at 23 March 1959 assigned Civil Term, of WAKE, argued as No. 452 at Fall Term 1959 of the Supreme Court, and now appearing on docket as No. 450 at Spring Term, 1960, of WAKE.

Civil proceeding for administrative and judicial review of North Carolina franchise and income tax assessments for the years 1951-1955 made by the Commissioner of Revenue in accordance with the procedure outlined by the tax statutes.

On 25 February 1957, Vanderbilt University filed application for a hearing before the Commissioner of Revenue and the original hearing was held on 17 June 1957.

On 23 August 1957, the Commissioner rendered his decision and held that the petitioner is doing business in North Carolina within the meaning of the applicable provisions of law and is required to pay franchise and income taxes. G.S. 105-122 and G.S. 105-134 respectively.

The Commissioner further held: "That said corporation is not exempt from taxation by this State with respect to franchise taxes as provided by G.S. 105-125 or income taxes as provided by G.S. 105-138; that although it is an educational institution said provisions have no application to it under the law as so interpreted."

It has been stipulated that the franchise and income taxes assessed and claimed by the State will not be contested as to amount if it is ultimately determined upon appeal that the petitioner, Vanderbilt University, is subject to the North Carolina franchise and income taxes.

The petitioner appealed from the decision of the Commissioner of Revenue to the Tax Review Board, and the Board entered its administrative decision on 3 November 1958, in pertinent part as follows:

"1. * * * that the Vanderbilt University, a corporation organized under the laws of the State of Tennessee, is an educational institution operated solely for educational purposes and that no part of its net earnings inures to the benefit of any private stockholder or individual.

"2. * * * that on or about June 29, 1951, the University acquired certain real estate and improvements thereon located in Charlotte, North Carolina, and subsequently leased said property to Textron

Southern, Inc., for a period of eleven years for a net annual rental of $330,000.  * * * that the lease agreement between the University and Textron Southern, Inc., contained certain renewal options.

"3. * * * that the annual rental income is placed in the general fund of the University along with its income from endowments, contributions, tuition fees and other items of income and is used exclusively for educational purposes.

"4. * * * that, although the University maintains no office in this State and has no office or other employees in this State and acquisition of the property within this State and the collection of rental income therefrom constitutes a steady, continuous and regular course of income producing business activity within this State.

"5. * * * that the exemption provisions of the statutes relied upon by the University are applicable only to educational institutions within this State.  * * * that on the basis of the competitive business activities of the University within this State the University is not exempt from income and franchise taxes under said exemption provisions.

"6. * * * that there should be no reduction of the tax liability asserted by the Commissioner of Revenue * * *."

The petitioner appealed from the Tax Review Board to the Superior Court of Wake County and the court overruled each and every one of the petitioner's exceptions to the adverse findings, conclusions and decision of the Tax Review Board and affirmed the decision of said Board. The petitioner excepted to the ruling in the Superior Court and appeals, assigning error.

*Smith, Moore, Smith, Schell & Hunter for petitioner.*
*Attorney General Seawell, Asst. Attorney General Pullen for Commissioner of Revenue.*

DENNY, J.  If it be conceded that the petitioner, Vanderbilt University, is doing business in North Carolina within the meaning of our franchise and income tax laws, it does not follow as a matter of course that the petitioner is liable to the State of North Carolina for such taxes in light of the exemptive provisions in our Revenue Act.

The determinative question on this appeal is whether or not Vanderbilt University is liable for franchise taxes pursuant to the provisions of G.S. 105-122, and income taxes pursuant to the provisions of G.S. 105-134.  In this connection, we must determine whether or not the exemptive provisions of G.S. 105-125 with respect to fran-

chise taxes, and the exemptive provisions in G.S. 105-138, subsection (3), with respect to income taxes, apply to Vanderbilt University.

Article V, section 5, of our State Constitution declares in pertinent part that: "Property belonging to the State or to municipal corporations, shall be exempt from taxation," and that "the General Assembly may exempt cemeteries and property held for educational, scientific, literary, charitable, or religious purposes * * *."

This Court has interpreted our statutes pertaining to *ad valorem* taxes to mean that it is the use to which the property is devoted rather than the character of the owner that determines whether the property is exemptible thereunder. *Odd Fellows v. Swain*, 217 N.C. 632, 9 S.E. 2d 365; *Rockingham County v. Elon College*, 219 N.C. 342, 13 S.E. 2d 618; *Guilford College v. Guilford County*, 219 N.C. 347, 13 S.E. 2d 622; *Sparrow v. Beaufort County*, 221 N.C. 222, 19 S.E. 2d 861; *Seminary, Inc. v. Wake County*, 251 N.C. 775, 112 S.E. 2d 528.

In determining whether or not the exemptive provisions of G.S. 105-125 apply to Vanderbilt University with respect to franchise taxes, and whether the exemptions provided for in G.S. 105-138, subsection (3), with respect to income taxes, apply to Vanderbilt University, we must apply an entirely different rule from that applied in determining whether property owned by an educational institution is subject to *ad valorem* taxes. As pointed out hereinabove, we determine the liability for an *ad valorem* tax based on the use of the property and not on the character of the owner. Here, we must determine the exemption from liability for franchise taxes based on the character of the owner as set out in G.S. 105-125; and with respect to the exemption of payment of income taxes we must base our decision (1) on the character of the recipient of the income and (2) on the use the recipient makes of such income, G.S. 105-138.

G.S. 105-125 provides: "None of the taxes levied in § 105-122 (franchise or privilege tax on domestic and foreign corporations) * * * shall apply to religious, fraternal, benevolent, scientific or educational corporations, not operating for a profit * * *."

G.S. 105-138 provides: "The following organizations shall be exempt from taxation (income) under this article: * * * (3) * * * corporations organized or trusts created for religious, charitable, scientific, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual."

As to liability for franchise taxes, we interpret G.S. 105-125 to expressly exempt a foreign corporation from franchise taxes if such corporation is an educational institution not operated for profit.

Likewise, with respect to income taxes levied pursuant to G.S. 105-134, G.S. 105-138 exempts corporations organized for educational purposes, "no part of the net earnings of which inures to the benefit of any private stockholder or individual."

We can find nothing in our franchise or income tax laws that limits the exemption of educational institutions to those located within North Carolina. The exemption provided in G.S. 105-296 (4) deals only with exemption from *ad valorem* taxes and has nothing whatever to do with franchise or income taxes.

Ordinarily, the interpretation given to the provisions of our tax statutes by the Commissioner of Revenue will be held to be *prima facie* correct and such interpretation will be given due and careful consideration by this Court, though such interpretation is not controlling.

Moreover, this Court will not follow an administrative interpretation which, in its opinion, is in conflict with the clear intent and purpose of the statute under consideration. *Cannon v. Maxwell, Com'r. of Revenue,* 205 N.C. 420, 171 S.E. 624; *Powell v. Maxwell, Com'r. of Revenue,* 210 N.C. 211, 186 S.E. 326; *Knitting Mills v. Gill, Com'r. of Revenue,* 228 N.C. 764, 47 S.E. 2d 240; *Watson Industries, Inc. v. Shaw, Com'r. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505; *Rubber Co. v. Shaw, Com'r. of Revenue,* 244 N.C. 170, 92 S.E. 2d 799; *Campbell v. Currie, Com'r. of Revenue,* 251 N.C. 329, 111 S.E. 2d 319.

The only way we could uphold the ruling of the court below would be to ignore the clear and unequivocal exemptive provisions of our revenue statutes on the subject and adopt the view expressed in 51 Am. Jur., Taxation, section 556, page 549, where it is said: "Right of Foreign Institutions to Benefit of Tax Exemption. — The courts generally construe the constitutional and statutory provisions granting such institutions exemptions from taxation to refer and apply only to the institutions of the state, and not to those of foreign states, particularly when they do not dispense their charity or benevolence in the state, or devote their property therein to such purposes in the state. Exemption to charitable, educational, and religious organizations is predicated upon the fact that they render service to the state, for which reason they are relieved of certain burdens of taxation. The effect of an exemption is equivalent to an appropriation. It cannot be said to be the intent of the legislature to make appropriation for the benefit or maintenance of foreign charities which, at best, have a remote chance only of benefiting the citizens of the state granting the exemption * * *."

In *Rubber Co. v. Shaw, Com'r. of Revenue, supra,* in considering the loss carry-over provisions contained in G.S. 105-147 (6) (d) of our Revenue Act, which carry-over provisions were made applicable to foreign and domestic corporations alike as well as to resident individuals, we said: "Our Legislature was under no constitutional or other legal compulsion to allow any carry-over to be deducted from taxable income in a future year. It enacted the carry-over provisions purely as a matter of grace * * *." This is exactly what the General Assembly has done with respect to educational corporations not operated for profit, without limiting such grace to domestic corporations only.

The General Assembly could have limited the loss carry-over provisions of our Revenue Act to domestic corporation and to resident individuals, but it did not see fit to do so; it elected to treat domestic and foreign corporations alike with respect to such loss carry-over provisions.

Since the statutory provisions with respect to exemptions contained in G.S. 105-125 and G.S. 105-138 are clear and unambiguous, we do not think this Court should read into the language of the General Assembly a meaning that in our opinion the language used by the General Assembly does not support. Therefore, we do not concur in the purported finding of fact No. 5, hereinabove set out, which is in reality a conclusion of law.

The Tax Review Board has found that Vanderbilt University is an educational institution operating solely for educational purposes and that no part of its net earnings inures to the benefit of any private stockholder or individual. The Board has also found that the annual rental income from the petitioner's Charlotte property is placed in the general fund of the University along with its income from endowments, contributions, tuition fees, and other items of income, and is used exclusively for educational purposes.

These findings bring the petitioner squarely within the exemptive provisions of G.S. 105-125 and G.S. 105-138 with respect to franchise and income taxes.

Therefore, the judgment of the court below is

Reversed.

RODMAN, J., took no part in the consideration or decision of this case.